## A07A2122. GEORGIA PEACE OFFICERS STANDARDS AND TRAINING COUNCIL v. ANDERSON.
(658 SE2d 840)

ELLINGTON, Judge.

We granted an application for discretionary appeal by the Georgia Peace Officer Standards and Training Council ("the POST Council") to decide whether the Baker County Superior Court erred when it reversed the decision of an administrative law judge ("ALJ") upholding the POST Council's decision to revoke Isaac Anderson's certification as a peace officer. Because we find that Anderson cannot escape an administrative inquiry into his job performance by invoking his right against self-incrimination, and because the record supports the ALJ's decision that Anderson's refusal to cooperate in an investigation provided sufficient grounds for decertification, we reverse the decision of the superior court.

OCGA § 50-13-19 (h) provides that a superior court reviewing the decisions of an administrative agency "shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact." The statute goes on to specify that the superior court

> may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) In violation of constitutional or statutory provisions; (2) In excess of the statutory authority of the agency; (3) Made upon unlawful procedure; (4) Affected by other error of law; (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Id. "[W]hen this Court reviews a superior court's order in [an administrative proceeding], our duty is not to review whether the record supports the superior court's decision but whether the record supports the final decision of the administrative agency." (Citations and punctuation omitted.) *Davis v. Brown*, 274 Ga. App. 48, 50 (1) (616 SE2d 826) (2005).

The record before the ALJ consisted of the transcript and exhibits from Anderson's federal trial on charges that Anderson, Tommy Williams, Williams's parents, and two others conspired to obstruct justice. Evidence at the federal trial showed that on the morning of December 7, 2002, Williams assaulted his ex-wife in Clearwater, Florida. Williams's ex-wife called 911 on her cell phone shortly after 2:00 a.m., and the 911 tape recorded the assault in progress. Five of

Williams's seven children later identified him as the person who had committed the assault. On the afternoon of December 7, Williams's parents approached Anderson, who was the sheriff of Baker County at the time, and bribed him to prepare an accident report to the effect that at 1:30 a.m. that morning, Williams was driving a car on Highway 253 when he hit a deer.[1] Anderson cooperated with investigating authorities at first, but later refused to answer questions or to take investigators to the scene of the alleged accident. Anderson testified that he stopped cooperating because he believed that he was also under investigation and because he felt he needed the advice of counsel. The jury acquitted Anderson of conspiracy and another charge.

At the conclusion of its own investigation, the POST Council found that Anderson had violated its standards and regulations by making fraudulent representations in the report, engaging in unprofessional conduct, and showing bad moral character. See OCGA § 35-8-7.1 (a) (2), (6), (7), (8). As a result, the POST Council revoked Anderson's certification.[2] Anderson contested the POST Council's decision, and the case was referred to the ALJ.[3] The POST Council moved for summary determination prior to the administrative hearing, asserting that no issues of fact remained for resolution.

The ALJ granted the POST Council's motion and upheld the revocation based on Anderson's refusal to cooperate with the investigation into Williams's assault. The ALJ found that Anderson had violated the sheriff's oath codified in OCGA § 15-16-4, "obstructed the truth[,] and failed to perform his statutory duties in violation of Georgia law." More specifically, the ALJ found that under OCGA § 35-8-7.1 (a) (6), " 'the minimal standards of acceptable and prevailing practice of a peace officer' require that the officer may not refuse to assist in a criminal investigation." Concluding that Anderson's refusal to assist in the investigation constituted "unprofessional conduct" under OCGA § 35-8-7.1 (a) (6) and was sufficient to support the sanction of decertification, the ALJ granted summary determination to the POST Council. When the POST Council took no action

---

[1] In August 2003, Williams and his parents pled guilty to conspiracy to obstruct justice for their roles in the fabrication of the accident report. Williams also pled guilty to interstate travel with the intent to violate a protective order.

[2] See OCGA § 35-8-7.1 (b) (1) (E) (providing sanction of revocation for violation of the same statute's subsection (a)).

[3] See Ga. Comp. R. & Regs. r. 464-8-.01 (1), (2) (granting affected party 15 days to give notice of its intention to contest an adverse action, and 30 days to admit or deny allegations in case summary attached to the notice of that adverse action); r. 464-8-.03 (ALJ "may preside at any conferences, reviews, or hearings").

to challenge the ALJ's determination, the latter became the final decision of the administrative agency.[4]

Anderson appealed the administrative decision to the superior court,[5] which reversed, holding that the State could not terminate Anderson for his failure to cooperate after invoking his constitutional right against self-incrimination.

1. The POST Council argues that Anderson's assertion of the right against self-incrimination cannot shield him from an inquiry into the effect of that assertion on his job performance. We agree.

The superior court relied on *Garrity v. New Jersey*, 385 U. S. 493 (87 SC 616, 17 LE2d 562) (1967), and its progeny, including *United States v. Friedrick*, 842 F2d 382 (D.C. Cir. 1988), and *United States v. Camacho*, 739 FSupp. 1504 (S.D. Fla. 1990), for its holding that the only remedy available to safeguard Anderson's right against self-incrimination was a reversal of the administrative decision to decertify him. See, e.g., *United States v. Camacho*, 739 FSupp. at 1512-1513 (III) (the right against self-incrimination " ' "privileges [a defendant] not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where answers might incriminate him in future criminal proceedings" ' "), quoting *Minnesota v. Murphy*, 465 U. S. 420, 426 (104 SC 1136, 79 LE2d 409) (1984).

Citing *Garrity*, *Friedrick* and *Camacho*, the Supreme Court of Georgia has recently held that trial courts should apply a "totality of the circumstances" analysis to the question whether a police officer's statements made under threat of termination should be excluded in a criminal proceeding. *State v. Aiken*, 282 Ga. 132, 133-136 (1), (2) (646 SE2d 222) (2007). But none of these cases indicates that a police officer's assertion of the right against self-incrimination insulates him from an *administrative* inquiry into the effect of that assertion on his job performance.

According to Anderson's own testimony at the federal trial, he not only refused to talk to investigators but also "absolutely refused" to take them to the scene of the alleged accident. This latter refusal does not implicate the right against self-incrimination as a matter of law. As we recently held:

> [T]he State *cannot* compel a person to commit an act which will have the result of *creating* incriminating evidence against

---

[4] See OCGA § 50-13-17 (a) ("When [an ALJ] makes [an] initial decision, and in absence of an application to the agency within 30 days from the date of notice of the initial decision for review, or an order by the agency within such time for review on its motion, the initial decision shall, without further proceedings, become the decision of the agency.").

[5] See OCGA § 35-8-7.2 (b) (party seeking review of a final administrative decision shall file a petition "in the superior court of the county of residence of the petitioner" within 30 days).

him, whereas the State *may force a person to submit to procedures reasonably undertaken to recover existing evidence from him*, even to the point of invading his body against his consent.

(Emphasis supplied.) *Dempsey v. Kaminski Jewelry*, 278 Ga. App. 814, 817 (1) (a) (ii) (630 SE2d 77) (2006), citing *Creamer v. State*, 229 Ga. 511, 516-518 (192 SE2d 350) (1972) (removal of bullet from defendant's body does not implicate privilege).

Had Anderson refused to answer questions at the scene of the alleged accident, or afterward, his right against self-incrimination might have been implicated. But his own testimony shows that he blocked investigators from visiting the physical scene of the alleged accident, and thus "access to evidence already in existence." *Dempsey*, 278 Ga. App. at 817 (1) (a) (ii). The superior court therefore erred when it held that Anderson's invocation of the right against self-incrimination insulated him from any further inquiry into the effect of that invocation on his job performance. See id. (act of producing potentially incriminating documents does not implicate the right against self-incrimination).

2. As the POST Council argues, and as we have suggested above, there was sufficient evidence in the record before the ALJ to support the conclusion that Anderson's refusal to cooperate amounted to unprofessional conduct sufficient to justify decertification. See OCGA § 35-8-7.1 (a) (6) (defining unprofessional conduct), (b) (1) (E) (authorizing revocation of certificate). We therefore reverse the superior court's reinstatement of Anderson's certification. See *Davis*, 274 Ga. App. at 50 (1) (superior court may not disregard applicable standards of review in those instances in which it sits as an appellate court). The POST Council's request for a remand is moot.

*Judgment reversed. Andrews, P. J., and Adams, J., concur.*

DECIDED MARCH 6, 2008 —

*Thurbert E. Baker, Attorney General, Joseph J. Drolet, Senior Assistant Attorney General, Robert W. Smith, Jr., Assistant Attorney General*, for appellant.

*John P. Cannon*, for appellee.